**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICKEY MASON,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | ) | Case No. 25-cv-4659<br><br>Hon. Steven C. Seeger |

# ORDER

Plaintiff Mickey Mason may proceed with his First Amendment retaliation claim against Defendants Wesley Schmidt, David Nolan, Matthew Scarbrough, Crystal Latigo, and Craig Carlock. All other defendants and claims are dismissed without prejudice. The Clerk is directed to file the amended complaint. Instructions regarding service of process will follow in a separate order.

## STATEMENT

Mickey Mason, a prisoner at the Danville Correctional Institution, brings this action under 42 U.S.C. § 1983, alleging that officials at the Sheridan Correctional Center violated his constitutional rights.

Because Plaintiff seeks redress from employees or officials of a governmental entity, the Court must screen his complaint and dismiss the complaint, or any portion of it, if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from an immune defendant. *See* 28 U.S.C. § 1915A; *Jones v. Bock*, 549 U.S. 199, 213–14 (2007); *Shaw v. Kemper*, 52 F.4th 331, 333 (7th Cir. 2022).

The Court screens the complaint using the same standard applied to motions to dismiss for failure to state a claim. The Court will allow a claim to proceed "only to the extent that the prisoner has pleaded facts to demonstrate that he has a plausible claim for relief." *See Schillinger v. Kiley*, 954 F.3d 990, 993–94 (7th Cir. 2020). Courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff['s] favor." *See Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). When screening a *pro se* complaint, courts construe the plaintiff's allegations liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Mason is a frequent filer in the federal courthouse. The complaint at hand reveals that Mason has filed at least eight prior lawsuits against dozens of people at the IDOC over the years.

The exact number of lawsuits is up in the air. One page of his complaint identifies eight prior lawsuits, and another page identifies nine prior lawsuits. *See* Cplt., at 4, 9–10 of 43. Whatever the number, it's a lot of litigation.

Mason hasn't gotten tired of filing lawsuits. But as the latest complaint tells it, officers at the IDOC have gotten tired of getting sued. And they retaliated against Mason because of it.

Mason alleges that he received legal mail at Sheridan Correctional Center that gave Defendants reason to suspect that he had filed a lawsuit against them. *See* Am. Cplt., at 4 (Dckt. No. 6). In response, Defendants "openly conspired to retaliate and punish Mason for exercising his First Amendment rights to complain and submit civil suits." *Id.*

As Mason tells it, Defendants falsely accused Mason of a disciplinary infraction, conducted a sham hearing, and then transferred him to another facility where he was subjected to more restrictive confinement.

Mason's theory of the case isn't crystal clear. The complaint seems to allege that Defendants retaliated against Mason for two reasons: he filed lawsuits against them, and he refused to work for internal affairs (presumably by becoming an informant).

A few days after Defendants learned of the lawsuit, Mason alleges that Wesley Schmidt and David Nolan, both of whom work for internal affairs, demanded that he assist internal affairs or face discipline. *See* Am. Cplt. ¶ 2. Mason declined, so he was sent to segregation "under a false investigation." *Id.* Defendant Matthew Scarbrough, whom Mason refers to as an "intel member," falsely accused Mason of engaging in a "dangerous disturbance" and issued him a disciplinary ticket. *Id.* ¶ 3.

Defendants Craig Carlock and Crystal Latigo served as the Adjustment Committee and presided over Mason's disciplinary hearing. Mason takes issue with how Carlock and Latigo conducted the hearing. First, Mason alleges that Carlock and Latigo ignored his request that they recuse themselves because he had previously filed grievances against them. *Id.* ¶ 4. Second, Carlock and Latigo refused to review video footage of the incident, saying that "due to intel writing the disciplinary ticket they don't [need] to investigate." *Id.* Finally, the officers denied Mason's request to call witnesses. *Id.*

Despite these alleged deficiencies, the Committee found Mason guilty. As punishment, he received a disciplinary transfer to Hill Correctional Center, where he was placed in segregation for three months. *Id.* ¶ 6. Mason alleges that the cells were cold because the windows did not close and he had "little to no clothes." *Id.* Mason was not allowed to have cleaning supplies, and remained chained even while walking to the shower and to make legal calls. *Id.*

Mason also received punishment of three months on "C-grade" status, three months on "B-grade" status, and three months without in-person visitation.

After this incident, Mason filed grievances with the prison, which Defendants Sherwin Miles and Donald Terry denied. *Id.* ¶ 5. But the disciplinary ticket authored by Scarborough was ultimately expunged on June 29, 2023, because evidence of Mason's innocence came to light.

Mason sued the various individuals involved in the incident, asserting two claims.

First, Mason brings a First Amendment retaliation claim. To state a retaliation claim, a plaintiff must allege that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to take the retaliatory action." *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

The first element of a retaliation claim is the existence of a protected activity. Mason identifies two allegedly protected activities: filing civil lawsuits and refusing to become an informant.[1] It is not clear that refusing to cooperate in a prison investigation is protected speech in this circuit. *See Clark v. Reed*, 772 Fed. Appx. 353, 355 (7th Cir. 2019) (explaining that it is not clearly established that refusing to act as an informant constitutes protected speech and noting that such a refusal "might not be protected").

But prisoners have a well-established First Amendment right to seek redress by filing grievances and lawsuits. *See Sanders v. Salemi*, 2012 WL 353844, at *4 (N.D. Ill. 2012) ("In general, prisoners have a First Amendment right to seek redress of a grievance by filing a complaint or a lawsuit.") (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)). So, Mason adequately pled the first element of his retaliation claim.

The second element of a retaliation claim is a deprivation that would deter activity protected by the First Amendment. Mason alleges that after learning of the lawsuits, prison officials took adverse action against him by bringing sham disciplinary proceedings resulting in more restrictive conditions of confinement. Placement in solitary confinement for speaking out against prison guards would likely deter someone from exercising their First Amendment rights. That's enough to satisfy the second element.

The third element of a retaliation claim requires a plaintiff to show that the protected activity motivated the deprivation. Here, Mason alleges that the retaliation was motivated by his lawsuits. The later expungement of his disciplinary ticket supports this allegation, as it suggests that the charges lacked sufficient evidentiary support.

So, Mason may proceed with his First Amendment retaliation claim against Schmidt, Nolan, Scarbrough, Latigo, and Carlock.

That said, the complaint fails to state a claim against Wardens Miles and Terry. The complaint alleges that they received "numerous notices threw [sic] grievances, verbal [sic], civil suits, calls from family, and Governor's Office that Plaintiff did not feel safe, that he was

[1] All of the defendants named in the complaint were also defendants in another case, *Mason v. Martin*, No. 22-cv-3774 (N.D. Ill. 2022).

targeted, and being retaliated against by Defendants (all employees or agents of IDOC)." *See* Cplt, at ¶ 5. Mason also claims that the two Wardens were "deliberately indifferent to Plaintiff's issues, turned a blind eye, and denied every grievance Plaintiff submitted as well." *Id.*

The complaint reads as if Wardens Miles and Terry were aware of Mason's complaints in general, not that they were aware of his complaints about this particular episode of retaliation. The complaint does not include facts that could give rise to a plausible inference that Wardens Miles and Terry retaliated against Mason during this particular episode. So it does not survive prescreening. Wardens Miles and Terry are dismissed.

Mason also claims that then-acting IDOC Director Rob Jeffreys, like Miles and Terry, turned a blind eye to his situation. That allegation is implausible based on the timeline. The other defendants learned of Mason's lawsuit on October 18, 2022, and took adverse action against him in the days and weeks that followed.

But Mason's communications with Jeffreys happened in January and February 2022 – months before the other defendants learned of the lawsuit. Jeffreys could not have retaliated against Mason for filing a lawsuit that he had not yet learned about. Jeffreys is accordingly dismissed from this action.

Next, Plaintiff brings a procedural due process claim, presumably under the Fourteenth Amendment. To state a due process claim, a plaintiff must allege (1) a constitutionally protected liberty or property interest, (2) a deprivation of that interest, and (3) a denial of due process. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

The complaint includes a number of allegations about the inadequacy of the disciplinary process. This Court doesn't need to reach that question. Plaintiff's claim cannot proceed because he has not alleged a protected liberty or property interest. *See Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

Prisoners rarely have a liberty interest when it comes to the conditions of confinement. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976).

In egregious circumstances, a disciplinary sanction can create a protected liberty interest where none would otherwise exist. But the interest is "generally limited to freedom from restraint . . . [that] imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).

Whether a disciplinary sanction imposes an "atypical and significant hardship" depends on the "combined import of the duration of the segregative confinement and the conditions endured." *See Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024) (quoting *Hardaway v.*

*Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)). Basically, courts must ask how bad it was, and how long it lasted.

Plaintiff has not adequately alleged that he suffered an "atypical and significant hardship." The time he spent in segregation is not enough, by itself, to implicate a liberty interest. *See, e.g.*, *Lisle v. Wellborn*, 933 F.3d 705, 721 (7th Cir. 2019) ("A sentence of four months in segregation is not such an extreme term as to trigger due process rights without more.").

"Fewer than six months in segregation may still establish a liberty interest 'depending on the conditions of confinement.'" *Ealy*, 109 F.4th at 964 (citing *Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015)). But conditions must be "appalling" to give rise to a liberty interest. *See Jackson v. Anastasio*, 150 F.4th 851, 860-64 (7th Cir. 2025) (holding that segregation conditions including "feces and urine on the walls, constant noise with inmates banging on cell doors, water contaminated with bacteria that causes Legionnaire's disease, and roaches and mice" implicate a liberty interest).

The conditions Mason describes do not rise to that level. While he says that he suffered from cold and broken windows, he does not describe the severity or duration of that problem in enough detail for the Court to infer that he suffered a "dramatic departure from basic conditions of prison life." *See Lisle*, 933 F.3d at 721.

For now, the Court will allow the First Amendment retaliation claim to proceed against Defendants Wesley Schmidt, David Nolan, Matthew Scarbrough, Crystal Latigo, and Craig Carlock. The First Amendment claim passes prescreening to the extent that it alleges retaliation for filing prior lawsuits. The First Amendment claim is dismissed to the extent that it alleges retaliation for refusing to work with internal affairs. All other Defendants are dismissed. The due process claim against all Defendants is dismissed.

Date: October 16, 2025

Steven C. Seeger
United States District Judge